UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLIFFORD M. LEWIS, et al.,<br><br>                Plaintiffs,<br><br>   v.<br><br>KEN SALAZAR, et al.,<br><br>            Defendants. | 1:10-cv-01281-OWW-DLB<br><br>**MEMORANDUM DECISION REGARDING DEFENDANTS MOTIONS TO DISMISS (Docs. 21, 23)** |

## I. <u>INTRODUCTION</u>.

Plaintiffs bring this action against the Ken Salazar, the Secretary of the Interior of the United States of America ("the Secretary"), and various private individuals ("Individual Defendants"). Plaintiffs filed a first amended complaint ("FAC") on August 17, 2010. (Doc. 12).

On November 19, 2010, the Secretary filed a motion to dismiss Plaintiffs' FACt. (Doc. 21). Individual Defendants filed a motion to dismiss on November 22, 2010. (Doc. 23).

Plaintiffs filed opposition to Individual Defendants' motion to dismiss on December 31, 2010. (Doc. 25). Plaintiffs filed opposition to the Secretary's motion to dismiss on January 5, 2010. (Doc. 26). The Secretary filed a reply on February 11, 2011. (Doc. 29). Individual Defendants also filed a reply on February

**1**

11, 2011.  (Doc. 31).

## II. **FACTUAL BACKGROUND**.

In or about 1916, the United States purchased a parcel of land in Fresno County, California and thereafter held the land in trust for the Table Mountain Band of Indians.  The land became known as the Table Mountain Rancheria ("Rancheria").  The Rancheria was considered an Indian Reservation and "Indian Country."  Rancheria residents were recognized as Indians for the purposes of federal law.

**The California Rancheria Termination Act**

In 1958, Congress passed the California Rancheria Termination Act ("CTRA").  The CTRA called for the distribution of all rancheria lands and assets to individual tribe members and called for a plan "for distributing to individual Indians the assets of the reservation or Rancheria, including the assigned and the unassigned lands, or for selling such assets and distributing the proceeds of sale, or conveying such assets to a corporation or other legal entity organized or designed by the group, or for conveying such assets to the group, as tenants in common."  The CTRA called for the government to give notice to all residents of the Rancheria who were recognized and designated as Indians under the 1916 Act before the land could be distributed. In addition, a government was required to do a survey of land on the Rancheria. The government was then required to improve or construct all roads serving the Rancheria, to install or rehabilitate irrigation, sanitation, and domestic water systems, and to exchange land held in trust for the Rancheria.

All Indians who received a portion of the assets were

**2**

1   ineligible to receive any more federal services rendered to them
2   based on their status as Indians. All Indians who did not receive
3   a portion of the assets were still eligible to receive federal
4   services rendered to them based on their status as Indians.

5       Very few of the Indians were given actual, written or
6   constructive notice of CRTA and those few who received notice, were
7   given land offered by the government. The few Indians that were
8   given land are the Individual Defendants named in this action:
9   Clarence Jones, Lester Burrough, E.B. Barnes, Lewis Barnes, William
10  Walker, Aaron Jones, Carolyn Walker and Twila Burrough. Any land
11  not conveyed to the named Defendant Indians was to be earmarked and
12  conveyed to a legal entity formed solely to receive the remaining
13  parcels for the benefit of those Indians who did not receive any
14  land under the initial distribution.

15  **1983 Settlement Agreement**

16      On or about March 28, 1983, the United States District Court
17  for the Northern District of California [in an action entitled
18  *Table Mountain Rancheria Association et al. v. James Watt et al.*
19  Case No. C-80-4595 MHP] entered a stipulated judgment which
20  re-instated the plaintiffs who had not participated in the 1958
21  distribution as Indians under the laws of the United States prior
22  to the 1958 CRTA and who were entitled to the benefits which they
23  enjoyed prior to 1958 ("Watt Judgment").   The district court
24  ordered the Secretary of the Interior to prepare and provide to
25  Plaintiffs a list of federal services, benefits, and programs and
26  the eligibility criteria which were available to Indians because of
27  their status as Indians between May 2, 1973 and June 25, 1975. The
28  Secretary did not comply.

**3**

Plaintiffs contend the Secretary's failure to comply with the Watt Judgment has caused Plaintiffs to expend great sums of their own funds to gain access to services, benefits and programs which the Secretary failed to provide to them. In many cases, because of the lack of funds, many Distributees were deprived of an education, adequate housing, prompt and adequate medical services. Plaintiffs were and are still being deprived of the federal services, benefits, and programs including but not limited to education, medical care and services, vocational training and services, housing services, repatriation of "remains," observation of rituals and income from the land.

The Watt Judgment provided that any land transferred as a result of the 1958 CRTA would continue to be owned by the buyers of 1958. However, there was land remaining which was not transferred in the 1958 CRTA and was to be held in trust by the Secretary of the Interior for the benefits of the distributees, their heirs, assigns, executors, administrators, or successors. This land is described specifically in the Watt Judgment and during the past twenty-seven years that land has increased in value and has produced great revenues and income. None of the revenues or income have been distributed to the Plaintiffs, their heirs, assigns, executors, administrators, or successors. Plaintiffs allege that Individual Defendants failed to represent the members as required under the Watt Judgment, and that they have a fiduciary relationship and a fiduciary duty to account for the revenues and distribute the income to the Plaintiffs, their heirs, assigns, executors, administrators and successors.

1

### III. __LEGAL STANDARD__.

2  Dismissal under Rule 12(b)(6) is appropriate where the
3 complaint lacks sufficient facts to support a cognizable legal
4 theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699
5 (9th Cir.1990). To sufficiently state a claim to relief and
6 survive a 12(b)(6) motion, the pleading "does not need detailed
7 factual allegations" but the "[f]actual allegations must be enough
8 to raise a right to relief above the speculative level." Bell Atl.
9 Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d
10 929 (2007). Mere "labels and conclusions" or a "formulaic
11 recitation of the elements of a cause of action will not do." Id.
12 Rather, there must be "enough facts to state a claim to relief that
13 is plausible on its face." Id. at 570. In other words, the
14 "complaint must contain sufficient factual matter, accepted as
15 true, to state a claim to relief that is plausible on its face."
16 Ashcroft v. Iqbal, --- U.S. ----, ----, 129 S.Ct. 1937, 1949, 173
17 L.Ed.2d 868 (2009) (internal quotation marks omitted).

18  The Ninth Circuit has summarized the governing standard, in
19 light of Twombly and Iqbal, as follows: "In sum, for a complaint to
20 survive a motion to dismiss, the nonconclusory factual content, and
21 reasonable inferences from that content, must be plausibly
22 suggestive of a claim entitling the plaintiff to relief." Moss v.
23 U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir.2009) (internal
24 quotation marks omitted). Apart from factual insufficiency, a
25 complaint is also subject to dismissal under Rule 12(b)(6) where it
26 lacks a cognizable legal theory, Balistreri, 901 F.2d at 699, or
27 where the allegations on their face "show that relief is barred"
28 for some legal reason, Jones v. Bock, 549 U.S. 199, 215, 127 S.Ct.

**5**

910, 166 L.Ed.2d 798 (2007).

In deciding whether to grant a motion to dismiss, the court must accept as true all "well-pleaded factual allegations" in the pleading under attack. Iqbal, 129 S.Ct. at 1950. A court is not, however, "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir.2001). "When ruling on a Rule 12(b)(6) motion to dismiss, if a district court considers evidence outside the pleadings, it must normally convert the 12(b)(6) motion into a Rule 56 motion for summary judgment, and it must give the nonmoving party an opportunity to respond." United States v. Ritchie, 342 F.3d 903, 907 (9th Cir. 2003). "A court may, however, consider certain materials-documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice-without converting the motion to dismiss into a motion for summary judgment." *Id*. at 908.

## IV. **Discussion**.

### A. **First Cause of Action**

Plaintiffs' first cause of action is advanced only against the Secretary. Plaintiffs assert violations of their Fifth and Fourteenth Amendment rights. As an initial matter, the FAC fails to allege facts sufficient to establish that violation of the Watt Judgment is tantamount to a constitutional violation. Further, there is no apparent jurisdictional basis for Plaintiff's claim.

Plaintiffs concede that *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971) does not provide a jurisdictional basis for their constitutional claims against the Secretary "because [the

**6**

1  Secretary] is being sued in his official capacity." (Doc. 26,

2  Opposition at 6). Plaintiffs' opposition does not identify any

3  alternative basis for jurisdiction over Plaintiffs' constitutional

4  claims against the Secretary, and nothing in the FAC indicates the

5  existence of a cognizable claim. In light of Plaintiffs'

6  concession that *Bivens* does not provide jurisdiction over their

7  claims, no logical basis for jurisdiction is ascertainable from the

8  FAC, or from Plaintiffs' opposition. The only other jurisdictional

9  grounds asserted in the FAC are the Indian Civil Rights act, 25

10  U.S.C. § 1301 et seq. ("ICRA"), and purported violations of the

11  Watt Judgment.[1] The ICRA cannot serve as the basis for federal

12  jurisdiction over Plaintiffs' action for damages against the

13  Secretary. *See, e.g., Boozer v. Wilder*, 381 F.3d 931, 935 n.2 (9th

14  Cir. 2004)(noting that a habeas petition is the only avenue for

15  relief from a violation of ICRA) (citing *Santa Clara Pueblo v.*

16  *Martinez*, 436 U.S. 49, 51-52, 67-70 (1978)); 25 U.S.C. § 1302 (ICRA

17  applies to "Indian tribe [] exercising powers of self government").

18  Nor does the Secretary's purported violation of the Watt Judgment

19  provide a basis for federal jurisdiction.[2]

20    Violation of the Watt Judgment does not provide an independent

21  basis for jurisdiction, as federal courts do not enjoy any inherent

22  jurisdiction to enforce a settlement agreement "simply because the

23  subject of that settlement was a federal lawsuit." *Alvarado v.*

24  _____

25  [1] In the section of the FAC entitled "jurisdiction," Plaintiffs invoke 28 U.S.C.
26  § 1343; 28 U.S.C. § 1357, and 28 U.S.C. § 1361. The facts alleged in the FAC and
   the causes of action asserted do not give rise to jurisdiction under any of these
   code sections.

27  [2] The FAC does not allege any personal involvement by the Secretary. The legal
28  flaws inherent in Plaintiffs' claim make it unnecessary to discuss factual
   pleading deficiencies.

*Table Mt. Rancheria*, 509 F.3d 1008, 1017 (9th Cir. 2007) (citing *O'Connor v. Colvin*, 70 F.3d 530, 532 (9th Cir. 1995)).

Although district courts have ancillary jurisdiction to vindicate their authority and effectuate their own decrees, such jurisdiction is inapplicable here, as this court did not issue the order Plaintiffs allege has been violated. *See, e.g., William Keeton Enters. v. A All Am. Strip-O-Rama*, 74 F.3d 178, 182 (9th Cir. 1996) (discussing power of court to enforce *its own* orders). Further, in issuing the Watt Judgment, the district court expressly limited its own jurisdiction to entertain claims for violation of its order to a one-year period. As the Ninth Circuit noted in affirming the dismissal of a case concerning the Watt Judgment:

> The Watt settlement only extended jurisdiction "for a period of one year from entry of judgment, or for such longer time as may be shown to be necessary on a motion duly noticed by any party within one year from entry of judgment." The Watt judgment was entered on June 16, 1983. Therefore, whatever ancillary jurisdiction the district court had expired on June 6, 1984.

*Alvarado*, 509 F.3d at 1018. *A fortiori*, if the court that issued the Watt Judgment no longer has jurisdiction over Plaintiffs' claim for breach, this court lacks jurisdiction.

As Plaintiffs's constitutional claims against the Secretary are legally and factually deficient, it is uneccessary to address the statute of limitations defense. Nonetheless, Plaintiffs' FAC suggests that any cognizable claim based on a breach of the settlement agreement is barred by the statute of limitations. Plaintiffs' opposition is devoid of legal authority suggesting otherwise. Plaintiffs FAC alleges they have suffered injury resulting from the Secretary's purported breach "for the past 27

years."   Plaintiffs' conclusory invocation of the continuing violations doctrine based on "an ongoing pattern or practice" is of no avail.   Assuming *arguendo* Plaintiffs' theory has legal merit, the FAC does not allege sufficient facts to support such a theory.

**B. Second Cause of Action**

Plaintiffs' second cause of action is asserted against the Secretary and the Individual Defendants.   The heading for the second cause of action states that the claims asserted are: (1) Violation of the Watt Judgment; (2) Breach of Fiduciary Duty; and (3) Violation of the Fifth and Fourteenth Amendments.

With respect to the Secretary, the second cause of action does not state any cognizable claim based on the Constitution or the Watt Judgment for reasons discussed above.   With respect to Plaintiffs' breach of fiduciary duty claim against the Secretary, the FAC does not allege sufficient facts to establish the existence of any actionable fiduciary relationship between the federal government and Plaintiffs.   *See Marceau v. Blackfeet Hous. Auth.*, 540 F.3d 916, 924 (9th Cir. 2008) ("a trust relationship alone is not enough to imply a remedy in damages; 'a further source of law [is] needed to provide focus for the trust relationship.'"); *compare United States v. Navajo Nation*, 537 U.S. 488, 505 (2003) (distinguishing "bare trust," which did not impose a judicially enforceable fiduciary duty on United States, from trusts created by statutes that can "fairly be interpreted as mandating compensation by the Federal Government for damages sustained") *with White Mountain Apache Tribe,* 537 U.S. 465, 474 (2003)(holding that actionable fiduciary relationship existed where statute went "beyond a bare trust and permit[ed] a fair inference that the

**9**

1   Government [was] subject to duties as a trustee and liable in
2   damages for breach.").

3       As to the Individual Defendants, Plaintiffs' claim for breach
4   of the Watt Judgment does not state a claim because of the
5   jurisdictional defects identified above.

6       The nature of Plaintiffs' constitutional claims against the
7   Individual Defendants is unclear, but to the extent Plaintiffs'
8   seek to assert a *Bivens* claim, the FAC is deficient because, *inter*
9   *alia*, it does not allege facts sufficient to establish any action
10  under color of federal law.   Nor does the complain allege any
11  action under the color of state or tribal law.

12      In opposition, Plaintiffs' argue that Individual Defendants
13  conduct amounted to a government taking within the meaning of the
14  Fifth Amendment because Individual Defendants acted in concert with
15  the Secretary to deprive Plaintiffs of their rights.   The FAC does
16  not allege facts sufficient to support Plaintiffs' conclusory
17  conspiracy theory.

18      The vague, conclusory, and contradictory allegations regarding
19  the purported fiduciary duty owed by Individual Defendants to
20  Plaintiffs do not state any cognizable claim for relief.   Paragraph
21  8 of the FAC alleges:

22      Any land not conveyed to [Individual Defendants] was to
        be earmarked and conveyed to a legal entity formed solely
23      to receive the remaining parcels and solely for the
        benefit of those Indians who did not receive any land or
24      benefits under the 1958 [CTRA] distribution

25  Paragraph 27 of the FAC suggests that the land referred to in
26  paragraph 8 has been held in trust by the Individual Defendants:

27      During the period 1983 to the present time, the lands of
28      the Table Mountain Rancheria not distributed in 1958 and

**10**

1    held in trust by Defendants, have increased in value,
     produced revenue through grazing rights, water rights and
2    certain other rights connected to the land. Defendants
     have distributed that revenue amongst themselves and have
3    not distributed any of the revenue to Plaintiffs.

4    Paragraph 18, alleges that:

5        land remaining which was not transferred in the 1958 CRTA
         and was and continues to be held in trust by the
6        Secretary of the Interior for the benefits of the
         Plaintiffs, their heirs, assigns, executors,
7        administrators, or successors.

8    (FAC at 10).

9        It is not clear from the face of the FAC which entity

10   Plaintiffs allege holds title to the lands in question.   The

11   purported basis for any fiduciary duty is not clear from the face

12   of the FAC either.   In opposition to Individual Defendant's motion

13   to dismiss, Plaintiffs clarify that "the general theory of the FAC

14   is that the [Individual Defendants], under the Watt Judgment, have

15   a fiduciary duty to the residents of Table Mountain and their heirs

16   and successors." (Doc. 25, Opposition at 4).   However, the FAC does

17   not identify the operative language of the Watt Judgment Plaintiffs

18   alleges creates a fiduciary relationship.

19       As the FAC is unintelligible, it is unnecessary to address the

20   Individual Defendants statute of limitations defense or invocation

21   of tribal immunity.

22                              **ORDER**

23       For the reasons stated, IT IS ORDERED:

24   1) Plaintiffs' first cause of action is DISMISSED, without

25   prejudice;

26   2) Plaintiffs' second cause of action is DISMISSED, without

27   prejudice;

28   3) Plaintiffs shall file and amended complaint within fifteen

                                **11**

1    days of electronic service of this decision; Defendants shall

2    file responsive pleading within twenty days of service of any

3    amended complaint; and

4    4) Defendants shall submit a form of order consistent with

5    this decision within five days of electronic service of this

6    decision.

7  IT IS SO ORDERED.

8  **Dated:   April 20, 2011**              **/s/ Oliver W. Wanger**
                                    UNITED STATES DISTRICT JUDGE

**12**