1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **CLIFFORD M. LEWIS, et al.,**<br><br>               **Plaintiffs,**<br><br>   **v.**<br><br>**KEN SALAZAR, et al.,**<br><br>         **Defendants.** | **1:10-cv-01281-OWW-DLB**<br><br>**MEMORANDUM DECISION REGARDING DEFENDANTS MOTIONS TO DISMISS SECOND AMENDED COMPLAINT (Docs. 50, 52)** |

## I. <u>INTRODUCTION</u>.

Plaintiffs bring this action against Ken Salazar, the Secretary of the Interior of the United States of America ("the Secretary"), and various private individuals ("Individual Defendants"). Plaintiffs first amended complaint ("FAC") was dismissed on May 3, 2011. (Doc. 41).

Plaintiffs filed a second amended complaint ("SAC") on May 5, 2011. (Doc.43). Individual Defendants filed a motion to dismiss the SAC on June 1, 2011. (Doc. 50). The Secretary also filed a motion to dismiss on June 1, 2011. (Doc. 52). Plaintiff filed opposition to the motions to dismiss on July 11, 2011. (Docs. 53, 54). Defendants filed replies on July 25, 2011. (Docs. 55, 57).

## II. <u>FACTUAL BACKGROUND</u>.

In or about 1916, the United States purchased a parcel of land

**1**

in Fresno County, California and thereafter held the land in trust for the Table Mountain Band of Indians.  The land became known as the Table Mountain Rancheria ("Rancheria").  The Rancheria was considered an Indian Reservation and "Indian Country."  Rancheria residents were recognized as Indians for the purposes of federal law.

**The California Rancheria Termination Act**

In 1958, Congress passed the California Rancheria Termination Act ("CTRA").  The CTRA called for the distribution of all rancheria lands and assets to individual tribe members and called for a plan "for distributing to individual Indians the assets of the reservation or Rancheria, including the assigned and the unassigned lands, or for selling such assets and distributing the proceeds of sale, or conveying such assets to a corporation or other legal entity organized or designed by the group, or for conveying such assets to the group, as tenants in common."  The CTRA called for the government to give notice to all residents of the Rancheria who were recognized and designated as Indians under the 1916 Act before the land could be distributed. In addition, the government was required to survey the land of the Rancheria. The government was then required to improve or construct all roads serving the Rancheria, to install or rehabilitate irrigation, sanitation, and domestic water systems, and to exchange land held in trust for the Rancheria.

All Indians who received a portion of the assets distributed under the CTRA were ineligible to receive any more federal services rendered to them based on their status as Indians. All Indians who did not receive a portion of the assets were still eligible to

**2**

receive federal services rendered to them based on their status as Indians.

The SAC alleges that very few of the Indians were given actual, written or constructive notice of CRTA, and that those few who received notice were given land by the government. The few Indians that were given land are the Individual Defendants named in this action: Clarence Jones, Lester Burrough, E.B. Barnes, Lewis Barnes, William Walker, Aaron Jones, Carolyn Walker and Twila Burrough. Any land not conveyed to the named Defendant Indians was to be earmarked and conveyed to a legal entity formed solely to receive the remaining parcels for the benefit of those Indians who did not receive any land under the initial distribution.

**1983 Settlement Agreement**

On or about March 28, 1983, the United States District Court for the Northern District of California [in an action entitled *Table Mountain Rancheria Association et al. v. James Watt et al.* Case No. C-80-4595 MHP] entered a stipulated judgment ("Watt Judgment") which re-instated the plaintiffs who had not participated in the 1958 distribution as Indians under the laws of the United States prior to the 1958 CRTA and who were entitled to the benefits which they enjoyed prior to 1958.  The district court ordered the Secretary of the Interior to prepare and provide to Plaintiffs a list of federal services, benefits, and programs and the eligibility criteria which were available to Indians because of their status as Indians between May 2, 1973 and June 25, 1975.  The Secretary did not comply.

 Plaintiffs contend the Secretary's failure to comply with the Watt Judgment has caused Plaintiffs to expend great sums of their

**3**

own funds to gain access to services, benefits and programs which the Secretary failed to provide to them.  Plaintiffs have been deprived of the federal services, benefits, and programs including but not limited to education, medical care and services, vocational training and services, housing services, repatriation of remains, observation of rituals and income from the land.

The SAC alleges that Rancheria land not transferred in the 1958 CRTA and was to be held in trust by the Secretary of the Interior for the benefit of persons living on the Rancheria. This land is described specifically in the Watt Judgment and during the past twenty-seven years that land has increased in value and has produced great revenues and income. None of the revenues or income have been distributed to the Plaintiffs.  Plaintiffs allege that Individual Defendants failed to represent the members as required under the Watt Judgment, and that they have a fiduciary relationship and a fiduciary duty to account for the revenues and distribute the income to the Plaintiffs, their heirs, assigns, executors, administrators and successors.

### III. <u>LEGAL STANDARD</u>.

Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks sufficient facts to support a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.1990).  To sufficiently state a claim to relief and survive a 12(b)(6) motion, the pleading "does not need detailed factual allegations" but the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Mere "labels and conclusions" or a "formulaic recitation of the elements of a cause

**4**

of action will not do." *Id.* Rather, there must be "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. In other words, the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* --- U.S. ----, ----, 129 S.Ct. 1937, 1949 (2009) (internal quotation marks omitted).

The Ninth Circuit has summarized the governing standard, in light of Twombly and Iqbal, as follows: "In sum, for a complaint to survive a motion to dismiss, the nonconclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir.2009) (internal quotation marks omitted). Apart from factual insufficiency, a complaint is also subject to dismissal under Rule 12(b)(6) where it lacks a cognizable legal theory, *Balistreri*, 901 F.2d at 699, or where the allegations on their face "show that relief is barred" for some legal reason, *Jones v. Bock*, 549 U.S. 199, 215 (2007).

In deciding whether to grant a motion to dismiss, the court must accept as true all "well-pleaded factual allegations" in the pleading under attack. *Iqbal*, 129 S.Ct. at 1950. A court is not, however, "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.2001). "When ruling on a Rule 12(b)(6) motion to dismiss, if a district court considers evidence outside the pleadings, it must normally convert the 12(b)(6) motion into a Rule 56 motion for summary judgment, and it must give the nonmoving party an opportunity to respond." *United States v. Ritchie*, 342 F.3d 903,

1   907 (9th Cir. 2003). "A court may, however, consider certain

2   materials-documents attached to the complaint, documents

3   incorporated by reference in the complaint, or matters of judicial

4   notice-without converting the motion to dismiss into a motion for

5   summary judgment." *Id.* at 908.

6                          **IV. Discussion**.

7   **A. First and Second Causes of Action**

8       Plaintiffs' first cause of action is advanced only against the

9   Secretary. The caption to the first cause of action states:

10  "Failure to Provide Federally Mandated Services, Programs, and

11  Benefits (Violation of 25 U.S.C. § 13 & 25 U.S.C. § 1901, Fifth and

12  Fourteenth Amendments) (Breach of Fiduciary Duty)." The SAC's

13  second cause of action asserts conspiracy against the Secretary and

14  various individuals. Both claims are unintelligible.

15      The facts and statutory references set forth in the SAC's

16  first cause of action fail to satisfy the fundamental notice

17  pleading requirement set forth in Rule 8 of the Federal Rules of

18  Civil Procedure. No cognizable claim against the Secretary can be

19  discerned from the allegations set forth in the SAC. According to

20  Plaintiffs' opposition to the Secretary's motion to dismiss, the

21  first cause of action asserts the following claims: (1) a claim

22  under 5 U.S.C. § 702 challenging the Secretary's "executing of the

23  acceptance of the conveyance;" (Doc. 54, at 6 n.3); (2) a claim

24  under 25 U.S.C. § 13[1] for unspecified violations of that statute

25

26

27  _____

    [1] The Snyder Act, 25 U.S.C. § 13, does not provide a basis for a private right
    of action for money damages. *E.g., White Mt. Apache Tribe v. United States*, 249
28  F.3d 1364, 1372 (Fed. Cir. 2001).

1  (Id. at 12-13); (3) a claim under 25 U.S.C. § 1901 *et seq.*[2] arising

2  out of the Secretary's abuse "of his power in dealing with Indian

3  children and their families as it relates to tribal rituals and the

4  mores of the tribal culture" (Id. at 13); and (4) a Fifth Amendment

5  takings claim predicated on the transfer of real property to the

6  United States in 1984 (Id. at 13-14).[3]    None of the claims

7  Plaintiff seeks to allege in the first cause of action are pled

8  with sufficient clarity to permit reasoned analysis.  Although the

9  Secretary's motion attempts to address the merits of Plaintiffs'

10  specific claims, Plaintiffs' opposition states that "Defendant's

11  description and analysis of what the allegations are in the SAC are

12  very different than what Plaintiffs believe they actually alleged."

13  (Doc. 54, Opposition at 4).  The inability of the Secretary–and the

14  court–to discern what the SAC intends to allege demonstrates the

15  extent to which the SAC is deficient.

16      In addition to attempting to address the merits of the claims

17  asserted in Plaintiffs' SAC, the Secretary's motion to dismiss

18  invokes the United States' sovereign immunity.  A plaintiff in a

19  lawsuit against the United States must point to an unequivocal

20  waiver of sovereign immunity.  *E.g., Holloman v. Watt*, 708 F.2d

21  1399, 1401 (9th Cir. 1983).  The Secretary correctly notes that

22  Plaintiffs have not identified any valid waiver of sovereign

23

24  [2] In Indian Child Welfare Act ("ICWA"), 25 U.S.C. § 1901 et seq., regulates
proceedings for termination of parental rights, adoptions, and foster care

25  placement involving Indian children.  *E.g., Nielson v. Ketchum*, 640 F.3d 1117,
1119 (10th Cir. 2011).  How ICWA relates to Plaintiffs' property-based claims is

26  unknown.

27  [3] As noted in the memorandum decision dismissing Plaintiffs' FAC, "Plaintiffs
concede that *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971) does not

28  provide a jurisdictional basis for their constitutional claims..." (Doc. 26,
Opposition at 6). It is dismissed with prejudice.

1   immunity related to the claims advanced in the SAC.

2       Plaintiffs contend that 5 U.S.C. § 702 provides the United

3   States' waiver of sovereign immunity with respect to Plaintiffs'

4   claims against the Secretary.   The limited waiver embodied in

5   section 702 does not effect a waiver for claims against the United

6   States for money damages.   5 U.S.C. § 702 (permitting actions

7   against the United States "seeking relief other than money

8   damages"); *e.g., Harger v. DOL*, 569 F.3d 898, 906 (9th Cir. 2009)

9   (damages claim outside scope of section 702's waiver).   Further,

10  the United States' waiver of sovereign immunity under the section

11  702 does not extend to Plaintiffs claims under, *inter alia*, 25

12  U.S.C. § 13 and 25 U.S.C. § 1901 *et seq.*[4]

13      During the hearing on the motion to dismiss Plaintiffs' FAC,

14  the court admonished Plaintiffs that they would be given only one

15  more opportunity to amend their complaint in order to articulate

16  cognizable claims.   Rather than remedy the deficiencies that

17  required dismissal of the FAC, Plaintiffs' SAC creates more

18  confusion by invoking wildly divergent statutory claims unsupported

19  by relevant factual allegations.   After three attempts, Plaintiffs

20  have not come close to stating a single cognizable claim against

21  the Secretary.   Plaintiffs' claims against the Secretary are

22  DISMISSED WITH PREJUDICE.

23  **B. Breach of Fiduciary Duty Claims**

24      The third and fourth causes of action in the SAC assert breach

25  of fiduciary duty against various Individual Defendants.

26

27  [4] The United States has waived sovereign immunity with respect to certain claims
    for money damages related to Indian Tribal Claims; such claims must be prosecuted
28  in the Court of Federal Claims, not a district court.   *See, e.g., White Mt.*
    *Apache*, 537 U.S. at 1132.

**8**

Plaintiffs invoke either *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U. S. 388 (1971) or, in the alternative, 42 U.S.C. § 1983 as the basis for the third cause of action. (SAC at 22-23). It appears Plaintiffs claim is that, by breaching a fiduciary duty owed to Plaintiffs', Individual Defendants effected a taking under color of law in violation of Plaintiffs' due process rights. The fourth cause of action is based on the alternative contention that Individual Defendants were private actors for the purposes of the conduct complained of. There are three categories of conduct underlying both of Plaintiffs' breach of fiduciary duty claims: (1) Defendants' conveyance of the subject real property to the United States in 1984; (2) Defendants' failure to distribute revenue to Plaintiffs during the period from 1958 to 1983; and (3) Defendants' failure to distribute revenue to Plaintiffs during the period from 1983 to present.

Plaintiffs' third cause of action is subject to a two-year statute of limitation, as the forum state's statute of limitations for personal injury actions apply to section 1983 claims as well as *Bivens* claims. *E.g., Jones v. Blanas*, 393 F.3d 918, 927 (9th Cir. 2004) (section 1983); *Matthews v. Macanas*, 990 F.2d 467, 468-69 (9th Cir. 1993) (*Bivens*); Cal. Civ. Proc. Code § 335.1. Plaintiffs' fourth cause of action is subject to a four-year statute of limitation. *See* Cal. Civ. Proc. Code § 343. Plaintiffs' claims are time barred.[5] With respect to Plaintiffs'

---

[5] In reaching the statute of limitations issue, the court in no way suggests that Plaintiffs have properly alleged any cognizable claims or that Individual Defendants are not entitled to sovereign immunity as a tribal governing body. Although the SAC is unintelligible, it is clear that Plaintiffs have failed to plead facts sufficient to establish any possibility that their claims are not time barred. It is unnecessary to reach any additional arguments.

**9**

claim that Defendants breached their fiduciary duty to Plaintiffs' by conveying the subject real property to the United States, the statute of limitations began to run decades ago at the time of conveyance in 1984.  The statute of limitations on such claims also began to run decades ago on Plaintiff's claims regarding the distribution of income.

Plaintiffs cite *Tademy v. Union Pac. Corp.*, 520 F.3d 1149 (10th Cir. 2008); *Hunter v. Sec. of U.S. Army*, 565 F.3d 986 (6th Cir. 2009); *Carpinteria Valley Farms v. City of Santa Barbara*, 344 F.3d 822 (9th Cir. 2003); *Walsh v. National Computer Systems, Inc.,* 332 F.3d 1150, 1157 (8th Cir. 2003), and *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002) for the proposition that the continuing violations doctrine applies to Defendants' "pattern and practice" of failing to distribute revenue to Plaintiffs.  None of the cases cited by Plaintiffs are relevant to Plaintiffs' invocation of the continuing violations doctrine.

In *Tademy,* the Tenth Circuit held that a jury could determine that separate discrete discriminatory acts were constituent parts of a continuous practice of discrimination. 520 F.3d at 1161.  In *Hunter*, the Sixth Circuit rejected a plaintiff's conclusory contention that discrete discriminatory acts constituted an ongoing pattern of discrimination.  565 F.3d at 994.  In *Carpenteria*, the Ninth Circuit "expressed no opinion" on whether plaintiffs could amend their discrimination complaint to allege that various discrete acts of purported discrimination established a "systematic pattern-or-practice" claim.  344 F.3d at 829 n.3.  In *Walsh*, the Eight Circuit held that a plaintiff properly alleged a continuing pattern of related discriminatory events rather than discrete

**10**

1  discriminatory actions concerning pregnancy discrimination.   332

2  F.3d at 1157.    In *Morgan*, the Supreme Court noted that it had no

3  occasion to consider whether the plaintiff had a viable "pattern-

4  or-practice" claim.   536 U.S. at 123, n.9.

5        The fact that an alleged violation of law causes continuing

6  impacts does not warrant application of the continuing violations

7  doctrine.   *E.g., Knox v. Davis*, 260 F.3d 1009, 1013 (9th Cir.

8  2001).   In *Knox*, the California Department of Corrections ("CDC")

9  suspended  a  criminal  defense  attorney's  visitation  and  mail

10 privileges with inmates in all CDC prisons.   Plaintiff invoked the

11 continuing  violations  doctrine,  arguing  that  each  time  she  was

12 denied access to one of her clients housed in a CDC prison, a new

13 violation of her rights occurred.   The Ninth Circuit rejected the

14 plaintiff's contention:

15       this court has repeatedly held that a mere continuing
         impact from past violations is not actionable.   Knox's
16       cause  of  action  accrued  when  she  received  Tristan's
         permanent and complete suspension letter on January 20,
17       1996. The continuing violation doctrine is inapplicable
         because Knox has failed to establish that a new violation
18       occurs  each  time  she  is  denied  her  visitation  or  mail
         privileges. Rather,  the  CDC's  subsequent  and  repeated
19       denials of Knox's privileges with her clients is merely
         the continuing effect of the original suspension.

20

21 *Id.* at 1013 (citations and quotations omitted).

22       The SAC does not allege facts sufficient to establish that a

23 new violation of law occurs each time a revenue distribution is

24 made excluding Plaintiffs.[6]   In the memorandum decision dismissing

25 the FAC, Plaintiffs were admonished that conclusory allegations of

26

27 _____

28 [6] In fact, the SAC does not allege any facts concerning when such distributions
   have been made; Plaintiffs advance only the conclusory allegation that Defendants
   have distributed revenues amongst themselves.   No further details are alleged.

"continuing violations" are insufficient, and that sufficient factual matter must be alleged in order to avoid the obvious statute of limitations problems presented by Plaintiffs' claims. (Doc. 38 at 8-9). After three attempts, Plaintiffs have failed to allege facts sufficient to suggest that any of their claims for relief are not time-barred. Plaintiffs' third and fourth causes of action are DISMISSED, with prejudice.

## ORDER

For the reasons stated, IT IS ORDERED:

1) The SAC's first and second causes of action are DISMISSED WITH PREJUDICE;

2) The SAC's third and fourth causes of action are DISMISSED WITH PREJUDICE; and

3) Defendants shall file a form of order consistent with this memorandum decision within five days of electronic service of this decision.

IT IS SO ORDERED.

**Dated:   August 29, 2011**               **/s/ Oliver W. Wanger**
                                          UNITED STATES DISTRICT JUDGE